People v Castillo (2024 NY Slip Op 05817)

People v Castillo

2024 NY Slip Op 05817

Decided on November 21, 2024

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 21, 2024

No. 102 

[*1]The People & c., Respondent,
v
Jairo Castillo, Appellant.

Matthew Bova, for appellant. 
Cynthia A. Carlson, for respondent. 

GARCIA, J.

The shooting at issue here occurred during a dispute over a drug transaction between the owner of a barbershop in the Bronx and the victim. After the owner and the victim had a series of confrontations in and around the shop, including a fistfight and threats of violence by the victim against the owner and his family earlier that same day, the victim returned to the shop. The owner called defendant, a friend, and shortly thereafter when defendant arrived at the scene, the victim confronted him with a razor blade, and defendant shot and killed him. Defendant was convicted of second-degree murder and second-degree criminal weapon possession. On appeal, he argues that his convictions must be reversed because of the trial court's failure to instruct the jury on the defense of justification (Penal Law § 35.15). We agree that the failure to charge the jury on that defense as to the murder count was error and, because that failure may have affected the jury's verdict on the possession count, both convictions must be reversed.
During defendant's trial, after hearing testimony from, among others, an eyewitness to the shooting and the medical examiner, the trial court declined defendant's request that the jury be charged with the justification defense. The trial court concluded that justification is not "an appropriate charge," noting that she had "reviewed the testimony, including the photographs, including the razor blade and reviewing the relative sizes and ages, descriptions of the two parties involved." The jury convicted on both counts. The Appellate Division affirmed, holding because [*2]"defendant stepped back, and the victim did not cut him," and that, even if the two shots to the victim's front were justified, "there was no reasonable view of the evidence . . . that defendant . . . was justified in firing four additional shots into the victim's back" (People v Castillo, 210 AD3d 414, 415 [1st Dept 2022]). A Judge of this Court granted defendant leave to appeal (39 NY3d 1109 [2023]), and we now reverse.
The defense of justification provides that a person may use physical force to defend himself against an assailant's "imminent use of unlawful physical force," but does not authorize the use of "deadly physical force . . . unless . . . [the person] reasonably believes that [the assailant] . . . is using or about to use deadly physical force" (Penal Law § 35.15). When considering a request for a justification charge, courts examine the evidence in the light most favorable to the defendant, and must provide the instruction if there is any reasonable view of the evidence that defendant was justified in his actions (see People v Heiserman, 39 NY3d 988, 990 [2022]). Justification has both a subjective requirement, that "defendant . . . actually believed . . . he [was] . . . threatened with the imminent use of deadly physical force," and an objective requirement, that defendant's "reactions were . . . those of a reasonable man acting in self-defense" (People v Collice, 41 NY2d 906, 907 [1977]). The defense does not automatically apply throughout the entirety of an encounter—a defendant who may be justified in using deadly physical force at the start of an encounter loses the right to use such force "at the point he can no longer reasonably believe the assailant still poses a threat to him'" (People v Williams, 35 NY3d 24, 45 [2020], quoting People v Del-Debbio, 244 AD2d 195, 195 [1st Dept 1997]). Applying this standard to the evidence here, we conclude defendant was entitled to a justification instruction on the second-degree murder charge.
At trial, an eyewitness testified that the victim confronted defendant in the barbershop's doorway, told him he could not leave, and held a razorblade against defendant's face, threatening to cut him from ear to ear. Defendant then took a step back, drew his gun, and shot the victim six times. The eyewitness testified that defendant and the victim were facing each other when defendant first fired, but that the victim was facing away from defendant as he continued to fire. Although his body turned, the victim did not move from where he was standing. The altercation lasted approximately thirty seconds, and the shooting itself only approximately five seconds from the first to the last shot.
The medical examiner testified that, because the victim's wounds lacked distinctive markings, or "stippling," the two men must have been at least two feet apart. According to the medical examiner, the autopsy showed that one bullet entered the victim's side, while another entered his arm, and four entered his back. The medical examiner also testified that three of the six shots would have been fatal: the one to the victim's side, and the two to the victim's back.
When viewed under the appropriate standard, there is a reasonable view of this evidence that defendant was justified in his actions (see Heiserman, 39 NY3d at 990). It is undisputed that the victim was the initial aggressor and, as the People concede, defendant faced an imminent threat of deadly force at the time the victim held the blade to his face. Despite the Appellate Division's reasoning to the contrary, that defendant stepped back does not mean he could no longer have reasonably believed the victim still posed a threat to him. Given the rapid unfolding of events—there was testimony that the entire confrontation was over in thirty seconds—jurors could also conclude that the shots to the victim's back were justified; that is, that defendant "reasonably believe[d] the assailant still pose[d] a threat to him'" (Williams, 35 NY3d at 45, quoting Del-Debbio, 244 AD2d at 195). While the victim appears to have turned his body at some point, he remained standing close to defendant, and under the circumstances it would not be unreasonable for defendant to believe the victim continued to pose a threat. In other words, a jury could conclude that defendant still subjectively feared an imminent deadly threat, and that such a fear and defendant's response were reasonable (see Heiserman, 39 NY3d at 990). Finally, on this record, there is a reasonable view of the evidence that defendant could not safely retreat into the back of the barbershop at the time he used deadly physical force (see People v Sanchez, 31 NY3d 949, 950 [2018]). Accordingly, the failure to provide the jury with a justification charge was error, and defendant's murder conviction must be reversed.[FN1]
The People are correct that the trial court did not err in failing to give a justification charge on the possession count. Justification is not available as a defense to a possessory offense, including possession of a weapon with intent to use it unlawfully against another person (see People v Pons, 68 NY2d 264, 265 [1986]; People v Almodovar, 62 NY2d 126, 129-131 [1984]). That does not end our inquiry, however, as we must examine whether the failure to provide the instruction on the murder count affected the jury's verdict on the possession count.
Defendant was charged with criminal possession of a weapon in the second degree, requiring the People to prove that he possessed the gun with the intent to use it unlawfully against another person (see Penal Law § 265.03 [1]). The model Criminal Jury Instruction provides that "a person acts with intent to use a loaded firearm unlawfully . . . when his . . . conscious . . . purpose is to use that loaded firearm unlawfully against another, and that intent need only exist at the very moment that a person engages in an unlawful use of the firearm against another" (CJI2d[NY] Criminal Possession of a Weapon in the Second Degree [Loaded Firearm] [with Intent to Use Unlawfully], Penal Law § 265.03 [1] [B] [Committed on or after Nov. 1, 1998] [emphasis added])[FN2]. But if the jury in this case was properly instructed on justification, it might have concluded that defendant acted lawfully when he shot and killed the victim in self-defense. If so, then the jury might have also concluded that defendant lacked the requisite intent (to use unlawfully) for the possession charge (see Jackson v Edwards, 404 F3d 612, 627 [2d Cir 2005] [in deciding a habeas petition, the court held that "if a properly instructed jury were to have concluded that (the defendant) was not guilty of any homicide offense, then it might have also concluded that he lacked the requisite intent to be guilty of the weapons charge" ]; see also Davis v Strack, 270 F3d 111, 134-135 [2d Cir 2001]). In other words, it is possible the jury here relied solely on evidence of the potentially justified shooting in finding defendant guilty of possession of the weapon with the intent to use it unlawfully.
To be clear, a jury finding of justification as to the use of a firearm does not preclude that jury from finding that the defendant nevertheless possessed the weapon with intent to use it unlawfully (see People v Muhammed, 17 NY3d 532, 545 [2011] ["(T)he intent element is satisfied if the defendant intended to use the weapon unlawfully against another at any time during the period of possession. . . ."] [emphasis added]). But with respect to the possessory offense, the jury must be instructed that, while justification is not a defense to that crime, in the event the jury finds that the shooting was justified, that lawful use of the weapon cannot be considered as proof of the unlawful intent element of the possession charge. For example, the jury's intent determination may rest on defendant's conduct "during the continuum of time that he possessed it prior to the shooting" (Pons, 68 NY2d at 268).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Order reversed and a new trial ordered. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided November 21, 2024

Footnotes

Footnote 1: We of course do not decide whether, based on the evidence introduced in any retrial, the People would be entitled to a charge that each shot must be justified.

Footnote 2: Here, the jury appears to have been instructed that unlawful "intent only exists at the very moment that a person engages in the unlawful use of the firearm against another" (emphasis added). That instruction would serve only to aggravate the problem described above. For simplicity, the writing assumes the standard instruction was given.